**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **MARVIN DOUCETTE ET AL** | **CASE NO. 2:19-CV-00250** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **MORRIS-SHEA BRIDGE CO INC** | **MAGISTRATE JUDGE KAY** |

# MEMORANDUM RULING

Before the Court is "Defendant Morris-Shea Bridge Company, Inc.'s Motion for Summary Judgment" (Rec. 31) wherein Morris-Shea moves to dismiss with prejudice all of Plaintiff's claims against it.

## FACTUAL STATEMENT

On September 30, 2016, Plaintiff Marvin Doucette was working for Chicago Bridge & Iron ("CB&I")[1] as an equipment operator at the Cameron LNG facility in Hackberry, Louisiana. Mr. Doucette was assigned to load a water truck from a portable water tower. As Mr. Doucette was walking across a walkway constructed with oil field mats, he slipped and fell, allegedly causing him injuries.

Defendant, Morris-Shea set up the portable water tower and set wooden platforms commonly referred to as "oil field mats." Plaintiff alleges that the only way to reach the valve to turn on the flow of the water was to walk on the oil field mat. Defendant, Morris-Shea disputes this and provides the Affidavit of Shane Moore, the Equipment Safety Manager for Morris-Shea, who declared that there was no need to walk on the mats in order

[1] CB&I is an Intervenor in this lawsuit.

to turn on the water valve.[2] Mr. Moore explains that a chain at the front of the tower was available to turn on the flow of water and a float automatically turned off the water flow.[3] Thus, there was no need to walk to the back of the tower; furthermore, the mats upon which Mr. Doucette allegedly slipped and fell, were not a walkway.[4]

Mr. Doucette alleges that the dangerous and defective condition of the oil field mats caused him to fall. Morris-Shea disputes that the oil field mats were dangerous and defective.

At the time of his fall, Mr. Doucette was employed by Chicago Bridge & Iron ("CB&I"). Morris-Shea maintains that Mr. Doucette was not authorized to use its water tower in order to fill his tank truck; Mr. Doucette disputes this. Morris-Shea maintains that the water tower was installed as per the manufacturer's specifications, and the mats Mr. Doucette used at the time of the accident were not designed to be a walkway. Mr. Doucette disputes this.

Morris-Shea maintains that its use of the water tower was restricted to daytime hours and no lights were set up for any night use. Mr. Doucette maintains the wooden walkway was uneven, constructed of wood slats with irregular gaps, and had wire rope loops protruding from the walking surface creating multiple trip hazards. Mr. Doucette further maintains that Morris-Shea never inspected, maintained, cleaned or repaired the wooden walkway or the area surrounding the water tower. Mr. Doucette also maintains that the Morris-Shea safety man could observe the water tower, the wooden walkway, and the area

[2] Defendant's exhibit 3. Rec. 31-4.
[3] Id.
[4] Id.

surrounding it every day the company was present on site, yet it failed to take any corrective action or warn of any danger.

Morris-Shea maintains that the use of the tower at night during Mr. Doucette's accident was without Morris-Shea's authority and approval. Mr. Doucette disputes this; he contends that he was authorized to use the water tower.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

In its motion for summary judgment, Morris-Shea maintains that it owed no duty to Mr. Doucette and that the water tower was not "unreasonably dangerous." Morris-Shea argues that there is no evidence that it exercised any control or had the ability to control the activities of Mr. Doucette. It also argues that Mr. Doucette did not have any contact with it, noting that CB&I apparently allowed drivers to use the water tower without Morris-Shea's approval or consent.

Louisiana uses a "duty-risk" analysis to aid the trier-of-fact wherein the fact-finder must balance the gravity and risk of harm against individual societal rights and obligations, the social utility of the thing, and the cost and feasibility of repair. *Boyle v. Board of Sup'rs, Louisiana State Univ.* 985 So.2d 1080, 1083 (La. 1/14/97). Whether a condition is unreasonably dangerous requires consideration of: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature.

*Hutchison v. Knights of Columbus, Council No. 5747,* 2002-1817 (La. App. 4 Cir. 5/7/03), 847 So.2d 665, 668, *writ granted sub nom. Hutchison v. Knights of Columbus,* 2003-1533 (La. 10/10/03), 855 So.2d 352, *and aff'd sub nom. Hutchinson v. Knights of Columbus, Council No. 5747,* 866 So.2d 228 (La. 2/20/04).

The issue of whether a duty is owed is a question of law, and the issue of whether a defendant has breached a duty owed is a question of fact. *Brewer v. J.B. Hunt Transpo., Inc.,* 35 So.3d 230, 240 (La.2010) (citing *Mundy v. Dep't of Health and Human Res.,* 620 So.2d 811, 813 (La.1993). "In the unusual case where the duty owed depends upon the circumstances of the particular case, analysis of the defendant's conduct should be done in terms of 'no liability' or 'no breach of duty.'" *Pitre v. Louisiana Tech Univ.,* 673 So.2d 585, 596 (La.1996).

Because the determination of whether a defect is unreasonably dangerous necessarily involves a myriad of factual considerations, varying from cases to case, *Reed v. Wal-Mart Stores, Inc.*, 708 So.2d 362, 364 (La.1993), the cost-benefit analysis employed by the fact-finder in making this determination is more properly associated with the breach, rather than the duty, element of our duty-risk analysis. See Maraist, et al, *Answering a Fool According to His Folly: Ruminations on Comparative Fault Thirty Years On*, 70 La. L. Rev. 1105, 1107 (2011). Consequently, the fact-finder determines whether a defendant has breached a duty to keep its property in a reasonably safe condition by failing to discover, obviate, or warn of a defect that presents an unreasonable risk of harm. *Broussard v. State ex rel. Office of State Bldgs.* 113 So.3d 175, 185 (La.2013).

Morris-Shea remarks that there is no evidence that it had any knowledge that Mr. Doucette was using its water tower, and that the tower was only for Morris-Shea employees who had been trained on how to use the tower. Morris-Shea argues that it was CB&I's duty to train Mr. Doucette to use the water tower.

Mr. Doucette argues that Morris-Shea did not prohibit anyone from using the water tower; it did not put up a fence around the water tower or place any signs restricting access to the tower. Mr. Doucette argues that the contract between CB&I and Morris-Shea did not prohibit the use of the water tower.[5] Mr. Doucette provides summary judgment evidence that he and another co-worker used their tank truck every shift for seven months, four times per shift as instructed by their foreman.[6]

Mr. Doucette argues that there are genuine issues of material fact as to whether or not he had authority to use the Morris-Shea water tower. He further argues that there are genuine issues of material fact as to whether or not it was necessary to walk to the rear of the tower to turn on the water, and whether or not the guy wires would prevent someone from walking to the rear of the tower.[7]

Mr. Doucette provides evidence that the Morris-Shea office trailer where Mr. Moore worked, was located near the water tower and could be viewed from the office trailer.[8] Mr. Doucette offers evidence that Mr. Moore could see the water tower, the wooden mats, and the condition of the area surrounding the office trailer.[9]

---

[5] Plaintiff's exhibit 5, Affidavit of Joel Denison.
[6] Plaintiff's exhibit 1, Doucette depo. p. 33.
[7] Plaintiff's exhibit 2, Moore depo. pp. 70-73.
[8] Id. pp. 44-47.
[9] Id.

The Court finds that Mr. Doucette has presented summary judgment evidence to create a genuine issue of material fact for trial as to whether or not Morris-Shea breached a duty to keep its property in a reasonably safe condition.

## CONCLUSION

Because the Court finds there are genuine issues of material fact for trial, the motion for summary judgment will be denied.

**THUS DONE AND SIGNED** in chambers on this 1st day of June, 2020.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**